Filed 7/31/14  Kirkland v. Rappaport CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOHN KIRKLAND et al., | B243607 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. BC477646, BC477723) |
| v. | |
| DOUGLAS RAPPAPORT et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Richard L. Fruin, Judge.  Affirmed.

Incite Law Group and Mark A. Vega for Plaintiffs and Appellants.

Gaims Weil West, Alan Jay Weil, Barry G. West, and Steven S. Davis for Defendants and Respondents.

_____

Plaintiffs John Kirkland and Charles Arnold appeal from the order granting a special motion to strike their defamation suits against attorney Douglas Rappaport and the law firm of Akin, Gump, Strauss, Hauer and Feld, LLP (Akin Gump) under California's anti-SLAPP statute (Code Civ. Proc., § 425.16).[1]  We affirm because Rappaport's allegedly defamatory report to his client was a "written . . . statement or writing made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(2)) and plaintiffs failed to establish that "there is a probability [they] will prevail on the claim" (§ 425.16, subd. (b)(1)).

## FACTS AND PROCEEDINGS BELOW

The facts relevant to the anti-SLAPP motions are undisputed.

Plaintiff Kirkland is the former outside general counsel of U.S. Aerospace, Inc. (USAE) and plaintiff Arnold is a former consultant to the company.

In December 2010, concerned about possible breaches of fiduciary duty and professional responsibility on the part of Kirkland and Arnold, officers of USAE retained Rappaport and his law firm, Akin Gump, "to provide advice regarding the propriety of actions taken by Mr. Kirkland, Mr. Arnold and other corporate fiduciaries working in cooperation with Mr. Kirkland and Mr. Arnold."  The officers "requested that [Rappaport and his firm] provide USAE with a recommendation of what steps, if any, should be taken by USAE, including litigation, to protect USAE."  The officers also provided Rappaport and his firm "factual information about actions taken by Mr. Kirkland, Mr. Arnold and other corporate fiduciaries working in cooperation with Mr. Kirkland and Mr. Arnold that concerned [them]."

---

[1]     Except where otherwise stated, the statutory references are to the Code of Civil Procedure.  The acronym SLAPP stands for Strategic Lawsuit Against Public Participation, a meritless suit designed to chill the defendant's exercise of the constitutional rights of free speech and to petition the government for redress of grievances.  (§ 425.16, subd. (a); *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815-817.)

In January 2011, Rappaport submitted his report to USAE's Chief Executive Officer (CEO) who sent copies to the company's president and directors.

Rappaport began his report by noting that his conclusions and recommendations were based "largely on facts and documents provided . . . by the Company" and that his "analysis may change should these facts prove inaccurate." The report concluded that "Mr. Kirkland likely violated his professional responsibilities as USAE's outside general counsel, as well as the fiduciary duties he owes to USAE. He appears to have consistently placed his own interests, and the objectives of other individuals, before those of his client and acted well beyond the scope of his authority. He also violated his fiduciary duties of loyalty, good faith and care to the Company, to its pre-merger shareholders, to its post-merger minority shareholders, and possibly to its creditors. He also likely aided and abetted similar breaches of duty by certain board members and the Series E holders."

The report did not directly allege that Arnold breached his fiduciary duties to USAE but it did discuss certain of Arnold's activities in connection with the company. In his complaint Arnold alleged that the report would be "reasonably understood . . . to mean that Mr. Arnold had lied, that he had committed a crime, and that he had violated his fiduciary duties." We accept this allegation as true for purposes of the anti-SLAPP motion. (§ 425.16, subd. (b)(2).)

Kirkland and Arnold each filed a libel action against Rappaport and Akin Gump. Defendants filed anti-SLAPP motions against both complaints and the motions were heard together. The trial court granted the motions, dismissed the plaintiffs' complaints and awarded attorney fees to defendants. Plaintiffs filed timely appeals.

## DISCUSSION

### I.     THE SLAPP STATUTE AND OUR STANDARD OF REVIEW.

Section 425.16, subdivision (b)(1) states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection

3

with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Thus, in evaluating an anti-SLAPP motion, the trial court must first decide whether the defendant has made a threshold showing that the plaintiff's cause of action is one "arising from" the defendant's act in furtherance of the constitutional right of petition or free speech. (§ 425.16, subd. (b)(1).) If the court finds the defendant has made that showing, it must then consider whether the plaintiff has demonstrated "that there is a probability that the plaintiff will prevail on the claim." (*Ibid.*)

On appeal, we review the trial court's ruling on an anti-SLAPP motion de novo. (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1262.) In doing so, we consider the pleadings and the evidence offered in support of and in opposition to the motion, but we do not consider the credibility of witnesses or the weight of the evidence. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79.)

## II. THE ANTI-SLAPP STATUTE APPLIES TO PLAINTIFFS' COMPLAINTS BECAUSE THEY ARISE FROM DEFENDANTS' WRITING MADE "IN CONNECTION WITH AN ISSUE UNDER CONSIDERATION OR REVIEW BY A . . . JUDICIAL BODY." (§ 425.16, SUBD. (E)(2).)

Rappaport maintains that plaintiffs' causes of action for libel are subject to the anti-SLAPP statute because they arise from an "act in furtherance of [defendants'] right of petition or free speech under the United States or California Constitution." (§ 416.25, subd. (e).)[2] Specifically, he maintains that his report to USAE's board of directors and CEO constituted a "written . . . statement or writing made in connection with an issue under consideration or review by a . . . judicial body" (§ 425.16, subd. (e)(2)). We agree.

---

[2] An attorney has standing to bring an anti-SLAPP motion to strike a cause of action arising from speech and petitioning activity undertaken on behalf of the attorney's client. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

Taken literally, section 425.16, subdivision (e)(2) is limited to litigation currently before a judicial body. Subdivision (e)(2), however, has not been construed literally by our Supreme Court. Instead, the Court has looked to the "litigation privilege" as an aid to construing the scope of section 425.16, subdivision (e)(2) with respect to the first step of the anti-SLAPP inquiry.[3] (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.) Accordingly, "'[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the litigation privilege of Civil Code section 47, subdivision (b) . . . such statements are equally entitled to the benefits of section 425.16.'" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.)

A communication is considered preparatory to or in anticipation of litigation if it "'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration."'" (*Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1268.) Kirkland and Arnold deny that Rappaport made his report in "good faith"; that legally viable claims existed against plaintiffs; that litigation was under serious consideration; and that the report was prepared to assist the officers and the board of USAE in their dealings with plaintiffs. We conclude these contentions lack merit.

Kirkland and Arnold claim that Rappaport did not make his report in good faith because he was engaged in a plot with the USAE officers who retained him to write "a poison-pen letter intended to intimidate the [USAE] board of directors" into not discharging and suing the officers. "Rappaport's letter was not a good faith analysis by an independent lawyer," plaintiffs charge, "but an advocacy piece on behalf of an unethical lawyer's secret constituency." This argument fails because "good faith" in the

_____

**3** Several commentators have pointed out that the term "privilege" is somewhat misleading in this respect because Civil Code section 47, subdivision (b) (formerly par. 2), more accurately confers "immunity" from civil liability. (Geibel, *Absolute Immunity For Communications Under California Civil Code Section 47(2)* (1982) 14 UWLA L.Rev. 35, fn. 3, citing articles and texts.)

5

context of the litigation privilege refers to a good faith intention to file a lawsuit, not a good faith belief in the truth of the communication. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251.)

Next, Kirkland and Arnold argue that Rappaport "failed to establish that there was a legally viable claim" against them. (Initial capitals omitted.) Again we disagree. Rappaport's legal conclusions and recommendations were based on "the documents and other information supplied by USAE." He cautioned that his "analysis may change should these facts prove inaccurate." Rappaport's qualified analysis of the facts supplied by the officers who retained him sufficiently demonstrated that USAE had a viable claim for breach of fiduciary duty against Kirkland and Arnold.

Kirkland and Arnold further argue that Rappaport failed to establish that "imminent litigation was under serious consideration." (Initial capitals omitted.) To the contrary, the record shows that the USAE officers were seriously considering litigation against plaintiffs if Rappaport's report confirmed their suspicion of plaintiffs' wrongdoing. The company's CEO testified that he retained Akin Gump in December 2010 and requested that the firm include in its report a discussion of "what steps, if any, should be taken by USAE, including litigation, to protect USAE." On January 26, 2011 Rappaport submitted his report to USAE's CEO who forwarded it to the corporation's board of directors the same day. The report concluded that USAE had grounds for an action against plaintiffs "for malpractice or for breach of fiduciary duty." "[T]he litigation privilege is not conditioned upon an 'imminency' requirement separate from the requirement that prelitigation statements be made in serious and good faith consideration of litigation." (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 36.) In any event, four months after Rappaport submitted his report, a shareholders' derivative action was filed against Kirkland and Arnold on behalf of USAE alleging breach of fiduciary duty on many of the same grounds discussed in the report. (Cf. *Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1269 [affirming anti-SLAPP motion based on litigation privilege where litigation filed four months after allegedly defamatory statements].)

6

Finally, Kirkland and Arnold maintain that "[t]he real purpose of Rappaport's letter was not to resolve any dispute between [USAE] and plaintiffs."  Rather, plaintiffs claim the report was a "sham" orchestrated to derail them from pursuing valid claims on behalf of USAE against one of its board members and a company represented by Akin Gump with interests adverse to USAE's.  There is no merit to this claim for the reasons discussed above.  (See pp. 5-6, *supra*.)

We conclude that defendants have made a prima facie showing that Rappaport's advice to USAE was an act made in furtherance of his and USAE's right of petition under section 425.16, subdivision (e)(2) as that provision has been interpreted by our Supreme Court.  (*Flatley v. Mauro*, *supra,* 39 Cal.4th at p. 323.)  By way of the present actions, Kirkland and Arnold are seeking to penalize Rappaport and his law firm for engaging in attorney-client communications—communications that are fundamental to petitioning the government for the redress of grievances.[4]

### III.   PLAINTIFFS HAVE NO PROBABILITY OF PREVAILING ON THEIR DEFAMATION ACTIONS BECAUSE THE LITIGATION PRIVILEGE PROVIDES A COMPLETE DEFENSE.

Kirkland and Arnold argue that they submitted sufficient evidence to meet their "minimal burden" of showing a probability of success on the merits.  (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 677.)  We need not decide whether Rappaport's report defamed Kirkland and Arnold because, even if it did, they "cannot establish a probability of prevailing if the litigation privilege precludes [defendants'] liability on the claim."  (*Digerati Holding,*

---

[4]     "Our legal system is premised on the assumption that law is intended to be known or knowable, that law is in its nature public information.  The 'rule of law' as we understand it requires promulgation. . . . And one fundamental, well-understood aspect of the lawyer's role is to be the conduit for that promulgation.  In a complex legal environment much law cannot be known and acted upon, cannot function as law, without lawyers to make it accessible to those for whom it is relevant."  (Pepper, *Counseling at the Limits of the Law:  An Exercise in the Jurisprudence and Ethics of Lawyering* (1995) 104 Yale L.J. 1545, 1547-1548, footnote omitted.)

*LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 888.)  This is a classic case for the application of the litigation privilege because plaintiffs are suing an attorney and his law firm based on confidential legal advice that they supplied to a client in anticipation of litigation.  (See discussion in Part II, *ante*.)

Civil Code section 47, subdivision (b) provides that a "publication or broadcast" made as part of a "judicial proceeding" is "privileged."  The litigation privilege is absolute and broadly applied regardless of malice.  (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1272.)  Its purposes are to "'afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation.'"  (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955.)

The usual formulation of the litigation privilege is that it applies "to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action."  (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)  The privilege, however, "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto[.]"  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)  In the case of a prelitigation communication the defendant need not establish the first two criteria for the privilege and the third and fourth criteria are established if the communication "relates to litigation that is contemplated in good faith and under serious consideration."  (*Action Apartment Assn., supra,* 41 Cal.4th at p. 1251.)  Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact.  (*Ibid*.)

For the reasons discussed above (see pp. 5-7, *ante*) we conclude that plaintiffs failed to carry their burden of introducing evidence sufficient to create disputed issues of fact as to whether the CEO and other officers of USAE, acting in good faith anticipation

and in serious contemplation of litigation, retained Rappaport to conduct an investigation into Kirkland's and Arnold's possible breach of fiduciary duty and legal malpractice.

**DISPOSITION**

The order is affirmed.  Respondents are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


JOHNSON, J.


MILLER, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.